**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Scott Lansing,

                Plaintiff,                              Civ. No. 13-1525 (RHK/FLN)
                                                                     **MEMORANDUM OPINION
                                                                     AND ORDER**

v.

Wilford, Geske & Cook, P.A.,

                Defendant.

Jonathan L.R. Drewes, Bennett Hartz, Drewes Law PLLC, Minneapolis, Minnesota, for Plaintiff.

Michael A. Klutho, Michelle Kreidler Dove, Bassford Remele, P.A., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

       Plaintiff Scott Lansing alleges in this action that Defendant Wilford, Geske & Cook, P.A. ("Wilford") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in connection with its efforts to collect his mortgage debt. Wilford now moves to dismiss. For the reasons that follow, its Motion will be granted.

## BACKGROUND

       According to the Complaint, in August 2004 Lansing borrowed $203,500 from Wells Fargo Bank, secured by a mortgage on his home in Minnetonka, Minnesota. (Compl. ¶ 6 & Ex. A, ¶ 5.) Lansing was unable to repay the loan and eventually fell into

default.  (Id. ¶ 6 & Ex. A, ¶ 11.)  The bank then retained Wilford, a debt-collection law firm, to collect the debt.  (Id. Ex. B.)

On June 6, 2013, Wilford sent Lansing a letter indicating that it had been retained "to commence a foreclosure proceeding" against him.  (Id.)  The letter set forth the amount of his outstanding debt and contained the following "validation notice"[1] in bold and capitalized letters:

> **UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID BY US.  IF YOU NOTIFY US IN WRITING WITHIN THE THIRTY-DAY (30) PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, WE WILL OBTAIN A VERIFICATION OF THE DEBT OR A COPY OF A JUDGMENT AGAINST YOU AND A COPY OF SUCH VERIFICATION OR JUDGMENT WILL BE MAILED TO YOU BY US.  UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY-DAY (30) PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

(Id.)  Below this notice was a paragraph further providing, in pertinent part, that "[a]ny future actions taken by our office to begin a foreclosure proceeding do not terminate or limit the thirty-day period to dispute the validity of the debt, or any portion thereof, or your ability to request verification of the debt or the name of the original creditor, as described above."  (Id.)  The Complaint does not allege that Lansing invoked his validation rights or otherwise disputed the debt.

---

[1] The term "validation notice" comes from a section of the FDCPA, entitled "Validation of debts," requiring debt collectors to inform debtors of their right to contest and seek verification of a debt. 15 U.S.C. § 1692g.

On June 14, 2013, Wilford filed a Summons and Complaint in the Hennepin County, Minnesota District Court, seeking foreclosure of the mortgage on Lansing's home. (Id. ¶¶ 8-9 & Exs. A, D.) The Summons indicated that Lansing had to "**REPLY WITHIN 20 DAYS TO PROTECT [HIS] RIGHTS**." (Id. Ex. D.) There is no allegation in the Complaint that Lansing ever was served with the Summons or Complaint. However, at the same time it filed those documents, Wilford also filed with the state court (as required by Minnesota court rules) a "Certificate of Representation and Parties," which identified the parties to the action by name and address. (Id. ¶ 9 & Ex. C.) The Certificate, which appears to be a pre-printed court form, indicated that the "court administrator shall, upon receipt of the completed certificate, notify all parties or their lawyers, if represented by counsel, of the date of filing the action and the file number assigned." (Id. Ex. C.)

Sure enough, a short time later Lansing received from the state court "a [n]otice of [c]ase [a]ssignment." (Id. ¶ 11.) That document is not attached to the Complaint, nor are its contents alleged. But within a week of receiving the notice, Lansing commenced the instant action, alleging that Wilford had violated the FDCPA by (i) filing the state-court action, thereby "overshadowing and nullifying" the validation notice in violation of 15 U.S.C. § 1692g (Count I), (ii) misleading Lansing "with inconsistent statements about his legal rights," in violation of 15 U.S.C. § 1692e (Count II), and (iii) "taking contradictory . . . actions . . . to mislead and confuse" him, in violation of 15 U.S.C. § 1692f (Count III). Wilford now moves to dismiss each of Lansing's claims. Its Motion has been fully briefed and is ripe for disposition.

- 3 -

**STANDARD OF REVIEW**

The Supreme Court set forth the standard for evaluating a motion to dismiss in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. <u>Id.</u> at 555; accord <u>Iqbal</u>, 556 U.S. at 678. Rather, the party seeking relief must set forth sufficient facts to "nudge[] the[] claim[] across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S at 556).

When reviewing a motion to dismiss, the Court "must accept a plaintiff's specific factual allegations as true but [need] not . . . accept . . . legal conclusions." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (citing <u>Twombly</u>, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the non-moving party. <u>Twombly</u>, 550 U.S. at 554-56. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679. Documents attached to a complaint are considered part of the pleadings and may be considered "for all purposes, including to determine whether [the] plaintiff has stated a plausible claim." <u>Brown</u>, 628 F.3d at 459-60 (internal quotation marks and citations omitted).

## ANALYSIS

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It is a broad remedial statute that imposes strict liability on debt collectors; its terms are to be applied "in a liberal manner." Picht v. Hawks, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) (Noel, M.J.), aff'd, 236 F.3d 446 (8th Cir. 2001). One of the FDCPA's provisions is the "validation" requirement, which gives a debtor the right to dispute a debt and seek verification thereof within 30 days of receiving a debt-collection letter. 15 U.S.C. § 1692g. If the debtor exercises this right, "the debt collector shall cease collection of the debt" until verification is obtained and provided to him. Id. Significantly, the statute "does not assume that the recipient of a collection letter is aware of [his] right to require verification of the debt." Owens v. Hellmuth & Johnson, PLLC, 550 F. Supp. 2d 1060, 1064 (D. Minn. 2008) (Kyle, J.) (quoting Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008)). Rather, the statute "requires the debt collector, as the party in the better position to know the law, to inform the consumer of that right." Jacobson, 516 F.3d at 90; accord 15 U.S.C. § 1692g(a).

Here, there is no dispute that Wilford provided the statutorily mandated validation notice in its June 6, 2013 letter. Lansing argues, however, that Wilford's *subsequent* actions "overshadowed" the validation notice, or in other words, "convey[ed] information in a confusing or contradictory fashion so as to cloud the required message with

uncertainty." Owens, 550 F. Supp. 2d at 1064 (citations omitted). Whether a debt-collector's conduct overshadows a validation notice is a question of law for the Court, see id. at 1065 (collecting cases), which must be viewed through the lens of an "unsophisticated consumer," a standard designed to "protect consumers of below average sophistication or intelligence without [being] tied to the very last rung on the sophistication ladder," Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000) (internal quotation marks and citations omitted). Ultimately, the question is whether the debt collector's communications would leave the unsophisticated consumer "uncertain as to [his] rights." Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010) (citations omitted).

Lansing asserts that Wilford overshadowed the validation notice here through the state-court foreclosure action, in particular by filing the Certificate of Representation.[2] He contends that Wilford "was aware that the court would automatically and immediately mail [him a] notice of the case filing" when presented with the Certificate of Representation, and once he received that notice of filing, he was "alerted i) that actions were presently being taken against him to collect the debt, and ii) to the existence of the publicly filed court documents against him, including the . . . summons . . . stating '**YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**.'" (Mem. in

---

[2] Importantly, it was not unlawful for Wilford to commence the foreclosure proceeding during the 30-day validation period. The FDCPA permits collection activities to continue during that period as long as they do not violate other statutory provisions or "overshadow . . . the consumer's right to dispute the debt." 15 U.S.C. § 1692g(b); accord, e.g., Bartlett v. Heibl, 128 F.3d 497, 501 (7th Cir. 1997) ("The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor.").

Opp'n at 8-9.)  According to Lansing, this created a "confusing set of deadlines" when viewed in tandem with the 30-day the validation notice in the June 6, 2013 letter, "confound[ing] and frustrat[ing]" the hypothetical "unsophisticated consumer."  (Id. at 9-10.)

The problem with this argument is that Lansing does not assert he ever received the summons containing the "contradictory" 20-day deadline.  The Complaint alleges only that he received a *notice of filing* from the state court; it does not allege that he received the summons along with that document (or at any other time).[3]  And Lansing's brief makes this abundantly clear, asserting that the notice of filing simply "*alerted*" him "to the existence of the publicly filed court documents," including the summons.  (Id. at 8 (emphasis added).)  Without any assertion that he *received* the summons from the state court or Wilford, or even that he took steps to obtain it on his own, the Complaint does not allege sufficient facts to state a plausible "overshadowing" claim.  See, e.g., Fassett v. Shermeta, Adams & Von Allmen, P.C., No. 1:12-cv-36, 2013 WL 2558279, at *9 (W.D. Mich. June 11, 2013) (lawsuit filed but not served on plaintiff during validation period was not overshadowing); Price v. Brock & Scott, PLLC, No. 1:10CV40, 2011 WL 1326934, at *9 (M.D.N.C. Apr. 6, 2011) (same).

In any event, there exists a more fundamental problem with Lansing's claim. Wilford's June 6, 2013 letter not only contained a validation notice, but also expressly informed him that "[a]ny future actions taken by our office to begin a foreclosure

---

[3] Interestingly, despite attaching to his Complaint the June 6, 2013 letter from Wilford, the state-court summons, the state-court complaint, and the "Certificate of Representation and Parties," Lansing has *not* attached the notice of filing.

proceeding do not terminate or limit the thirty-day period to dispute the validity of the debt, or any portion thereof, or your ability to request verification of the debt or the name of the original creditor, as described above." In the Court's view, this language scuttles the contention that the state-court action somehow "overshadowed" the validation notice or would have confused an unsophisticated consumer about his rights. See, e.g., Ellis, 591 F.3d at 136 (holding that a validation notice "is overshadowed where a debt collector serves a consumer with process initiating a lawsuit during the validation period, *without clarifying that commencement of the lawsuit has no effect on the information conveyed in the validation notice*") (emphasis added); Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914, 919-20 (7th Cir. 2004) (*en banc*) (noting that a debt collector can avoid liability by providing notice that a lawsuit does not impair validation rights), superseded by statute on other grounds, Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(a), 120 Stat. 1966 (2006).[4]

For all of these reasons, Count I of Lansing's Complaint, alleging a violation of 15 U.S.C. § 1692g, cannot pass muster. But the same logic applies equally to his remaining claims, for "misleading" conduct violating 15 U.S.C. § 1692e (Count II) and

---

[4] Lansing argues that the additional language in Wilford's June 6, 2013 letter does not absolve it of liability "because [the] state court action sought a monetary judgment rather tha[n] just a judgment for foreclosure." (Mem. in Opp'n at 12.) In the Court's view, Lansing is attempting to split semantic hairs. It cannot reasonably be disputed that the state-court action was a "foreclosure proceeding" and, hence, fell clearly within the additional language in the June 6, 2013 letter. (Compl. Ex. B ("Any future actions taken by our office to begin *a foreclosure proceeding* . . . .") (emphasis added).) Furthermore, the state-court action did not seek a money judgment, as Lansing argues. Rather, in addition to seeking foreclosure, that action sought a *determination* that Lansing was *liable* for any deficiency remaining after the property was sold and the proceeds were applied to his outstanding debt; it did not seek the entry of judgment in any particular amount, nor could it as the property had not yet been sold. (Compl. Ex. A at 3-4.)

§ 1692f (Count III), which are also predicated on the summons' "contradictory" 20-day deadline. Similarly, given the language in the June 6, 2013 letter that subsequent foreclosure proceedings would not vitiate Lansing's validation rights, the Court concludes Wilford's conduct cannot have been misleading as a matter of law. For these reasons, all of Lansing's claims fail and must be dismissed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Wilford's Motion to Dismiss (Doc. No. 7) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: October 10, 2013          s/Richard H. Kyle
                                 RICHARD H. KYLE
                                 United States District Judge